## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEDECIA MANNA                                    :
d/b/a 9ᵗʰ AND LLOYD INSPECTIONS,    :
    Plaintiff,                                 :
                                                   :
v.                                                       :    CIVIL ACTION NO. 23-CV-4065
                                                   :
PARSONS COMMERCIAL                          :
TECHNOLOGY GROUP, INC., *et al.*,    :
    Defendants.                            :

### MEMORANDUM

**PEREZ, J.**                                                                    **June 18, 2024**

Plaintiff Kedecia Manna, a self-represented litigant, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of her due process and equal protection rights and related state law tort claims arising from a series of suspensions of her Certificates of Appointment to perform safety and emissions tests at her automobile inspection station. Currently before the Court are Manna's Second Amended Complaint[1] ("SAC" (ECF No. 6)) and her Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1).[2]  Manna names the following

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedeas the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019)*, cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").  The Second Amended Complaint, therefore, is the operative pleading.

[2] Also pending is a Motion to Dismiss filed by Defendant Kayla Labowski.  (*See* ECF No. 7.)  In light of the Court's disposition of the SAC on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Labowski's Motion will be denied without prejudice as moot.

as Defendants: the Commonwealth of Pennsylvania, Department of Transportation ("DOT");

DOT Director Stephen Madrak; DOT Supervisor Troy Roadcap; Pennsylvania State Trooper and

Fraud Investigator Christopher Tustin; 9th and Lloyd Fast Auto Tags and State Inspections ("9th

and Lloyd"); Kayla Labowski; Ernest F. Manna, IV ("Manna IV"); Tetyanna Manna; Ernest F.

Manna, V ("Manna V"); Parsons Commercial Technology Group, Inc ("Parsons"); Parsons

Quality Assurance Manager ("QAM") Thomas Bishop; Parsons Quality Assurance Officer

("QAO") Gregory Neely; and ManFam Real Estate.[3]  (SAC at 23-25.)  Manna asserts both

individual and official capacity claims against the non-entity Defendants.[4]  (*Id.*)

The Court will grant Manna leave to proceed *in forma pauperis*.  The following claims

will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii):  Counts Seven and

Eight; that part of Count Nine asserting claims based on 18 U.S.C. § 245; Counts Twelve,

Thirteen and Sixteen; Manna's claims against the DOT for money damages; her official capacity

claims against Bishop, Neely, Kayla Labowski, Manna, V, Tetyanna Manna, and Manna, IV; and

her § 1985 conspiracy claims.  Manna's equal protection claims, her § 1983 conspiracy claims,

her state law claims for tortious interference with contractual relations and tortious interference

with prospective economic advantage, and her claims against 9th and Lloyd Fast Auto Tags and

State Inspections and ManFam Real Estate will be dismissed without prejudice for failure to state

---

[3] Manna's SAC does not include any factual allegations describing 9th and Lloyd Fast Auto Tags and State Inspections or ManFam Real Estate's participation in the events giving rise to her claims.  (*See* SAC.)  Her claims against these entities are, therefore, dismissed without prejudice as not plausible.

[4] Manna asserts the following claims:  Counts One through Six of the SAC assert due process claims, Counts Seven through Nine assert claims for criminal conspiracy, Counts Ten and Eleven assert state law claims for tortious interference with existing and prospective contractual relations, Counts Twelve and Thirteen challenge the legality of the contract between DOT and Parsons on constitutional and state law statutory grounds, Count Fourteen asserts equal protection claims, Count Fifteen challenges the contract between DOT and Parsons on vagueness grounds, and Count Sixteen raises claims under the Pennsylvania Constitution.  (*See* SAC.)

a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Manna's due process claims asserted in Counts One through Six and part of Nine, and her § 1983 conspiracy claims, will be served for a responsive pleading.  Manna will be afforded the option to proceed with those claims only or file a third amended complaint.

## I.   FACTUAL ALLEGATIONS[5]

Manna is the owner and operator of 9th and Lloyd Inspections and is an inspection mechanic licensed to conduct both emissions and safety inspections.  (SAC at 23, 34.)  She received her Certificates of Appointment (essentially, her licenses to operate) for both emissions and safety inspections in November 2012.  (*Id.*) The gravamen of Manna's claim[6] is that over a period of approximately three years, her Certificates of Appointment were summarily suspended 13 times by DOT employees on the advice of Parsons employees, who were then under contract with the DOT, and that Parsons and DOT employees undertook other actions without cause or notice to impede Manna's ability to perform safety and emissions inspections.  Manna alleges that as a result of their conduct, she has been unable to operate her automobile inspection station since November 2, 2021.  Manna alleges further that the Parsons and DOT employees engaged in this conduct at the behest of and with the cooperation of her relatives, who own and operate a competing tag and inspection station housed in the same building as Manna's station that they opened after Manna had established her business.  (*See* SAC.)

---

[5] The allegations set forth in this Memorandum are taken from Manna's SAC (ECF No. 6.)  The Court adopts the pagination supplied by the CM/ECF docketing system.  Throughout her SAC, Manna refers to exhibits, but there are no exhibits attached to the SAC, and there were no exhibits attached to Manna's original Complaint or her Amended Complaint.  (*See* ECF Nos. 2, 5.)  The docket also does not reflect that the referenced exhibits were filed separately.

[6] Manna's SAC is lengthy and largely devoted to establishing a background for the events giving rise to her claims.  The Court will limit its recitation of the factual allegations to those necessary to an understanding of Manna's claims.

**A.      Background**

**1.      Bishop and Neely's Pre-2021 Inspections of Manna's Station**

As a licensed inspector, Manna is subject to regular inspections by DOT.  Manna alleges that DOT has contracted the performance of these inspections, as well as a broad range of other tasks, to Parsons and that pursuant to the contract, Parsons operates the Pennsylvania Vehicle Inspection and Maintenance Program for DOT.  (*Id*. at 29.)  Parsons is allegedly free to use its discretion in performing a broad range of activities for DOT, most relevantly in this case, performing investigations and inspections, holding hearings, and issuing suspensions.  (*Id*.) Specifically, QAOs are responsible for investigating and inspecting prospective applicants prior to the issuance of a Certificate of Appointment.  (*Id*. at 30).  QAOs also audit stations, investigate consumer complaints, and take disciplinary action when necessary.  (*Id*.)  Where necessary, hearings are held at Parsons' site before its personnel.  (*Id*.)  Manna alleges that any disciplinary action that DOT takes is based solely on information provided by Parsons.  (*Id*.)  She avers that Parsons also has the authority to lock an inspection station's vehicle emissions analyzer at its discretion.  (*Id*.)

Parsons conducts "administrative" and "investigative" audits on inspections stations as part of its contract with DOT.  (*Id*. at 31.)  The DOT maintains a portal for inspection station operators that allows them to view the status of their Certificates of Appointment.[7]  (*Id*. at 33-34.)

---

[7] The status of a station's Certificate of Appointment determines the station's ability to perform vehicle inspections and purchase certificates of inspection (inspection stickers).  (SAC at 33.) When Certificates of Appointment are "ACTIVE," "PENDING SUSPENSION," or "APPEALED," station owners can perform inspections and purchase stickers.  (*Id*.)  When they are "SUSPENDED" or "ABANDONED," the station owner cannot perform inspections or order stickers.  (*Id*.)

Manna alleges that Defendant Bishop became the official auditor for Manna's vehicle inspection station in May 2018.[8]  (*Id*. at 36.)  On September 18, 2018, he performed an investigative audit arising from an alleged mismatched vehicle identification number ("VIN") but could not complete the investigation because Manna's computer analyzer, used to perform inspections, would not power up.  (*Id*.)  Bishop immediately contacted a Parsons staff member to have Manna's emissions analyzer locked, preventing Manna from performing emissions inspections, without first providing an administrative hearing.  (*Id*. at 37.)  On December 18, 2018, Bishop repeated the investigative audit.  Subsequently, on January 20, 2019, DOT Supervisor Roadcap changed Manna's station status on the portal to "PENDING SUSPENSION."  (*Id*.)

In March 2019, Manna attended a departmental hearing with Bishop and his manager, QAM Wolpert, regarding the September and December audits.  (*Id*. at 37.)  On April 19 and May 3, 2019, notices of suspension of Manna's safety and emissions Certificates of Appointment, respectively, were mailed to her.  (*Id*. at 38.)  On June 19, 2019, Manna timely filed an emergency motion in state court to stay the suspension of her Certificates of Appointment, which was granted following a hearing.  (*Id*.)  On July 2, 2019, Manna's station status on the portal was changed to "APPEALED."  (*Id*.)

On September 26, 2019, QAO Bishop performed an emissions and safety audit on Manna's station to investigate claims allegedly made by Defendant Labowski[9] that Manna

---

[8] Manna alleges that prior to Bishop's appointment as her station's official auditor, her station had never been subjected to an investigative audit.  (*Id*. at 37.)  However, later in her SAC, she alleges that she had previously been issued violations for untimely transfer of information, which were promptly voided when the error was cured and did not require her to resort to court intervention.  (*Id*. at 103.)

[9] Defendant Labowski, with her husband Defendant Manna, V, own and operate the competing tag and inspection station located on the premises of Manna's station and, based on the

allowed her unlicensed administrative assistant to perform vehicle inspections.  (*Id*. at 39.)  He did not provide the audit report to Manna until a Departmental hearing in March 2020.  (*Id*. at 40.)  Following the hearing, on April 14, 2020, Defendant Roadcap changed Manna's station status on the DOT portal to "PENDING SUSPENSION."  (*Id*. at 41.)  On June 12, 2020, unidentified Defendants mailed a notice of suspension of Manna's emissions and safety Certificates of Appointment to Manna.  On August 4, 2020, Manna's timely state court emergency motion to stay the suspension of her Certificates of Appointment was granted following a hearing.  (*Id*.)  Later that day, Manna's status on the portal was changed to "APPEALED."  (*Id*.)

In April 2021, Parsons QAO Neely performed an investigative audit of a member of Manna's staff following a customer complaint.  (*Id*. at 42-43.)  Manna was not provided with a copy of Neely's audit report.  (*Id*.)  Following the audit, Neely allegedly contacted Defendant Bishop, who locked Manna's emissions analyzer.  (*Id*. at 43.)  Additionally, an "administrative" stop was placed on Manna's safety station, and the status of her station on the DOT portal was changed to "PENDING SUSPENSION," both actions upon the direction of DOT Supervisor Roadcap.  (*Id*.)  The next day, Bishop delivered notices of the immediate suspension of Manna's emissions and safety Certificates of Appointment, signed by Defendant Madrak.  (*Id*.)  The status of Manna's station on the portal was changed to "SUSPENDED."  (*Id*.)  On May 11, 2021, Manna's timely emergency state court motion to stay the suspension of her Certificates of

---

allegations in the SAC, relations among the parties are uneasy at best.  *See infra* at 7-8.  Manna alleges that Bishop had an unspecified "relationship" with Manna, IV, Manna's landlord, before Bishop became Manna's auditor.  (SAC at 36.)

Appointment was granted following a hearing.[10] (*Id*. at 44.) On May 12, 2021, Manna's station status on the portal was changed to "APPEALED." (*Id*. at 45.) Her emissions analyzer was also unlocked. (*Id*.) Manna alleges she was never provided a Departmental hearing for the April suspensions, yet her vehicle analyzer was locked and her station status was changed to "SUSPENDED," effectively closing her station for one and a half months. (*Id*.) She also alleges that she was "disciplined" on May 27, 2021, when unidentified agents of DOT limited the number of inspection stickers Manna was permitted to purchase to 50. (*Id*.)

### 2.    Establishment of Competing Inspection Station

Manna alleges that Parsons employees repeatedly audited her business and attempted to suspend or cancel her Certificates of Appointment as part of a conspiracy among the Parsons employees and members of Manna's family who own and operate a competing tag and inspections station that was established during the first few years of Bishop's assignment as Manna's auditor. The building housing Manna's business is allegedly owned by Defendant Tetyanna Manna on behalf of her husband, Manna, IV. (*Id*. at 34.) The competing auto tag and inspection station, owned by Manna, V and his wife, Defendant Kayla Labowski, is also located in the 1033 W. 9th Street building housing Manna's station. (*Id*.) The terms of Manna's lease were the subject of state court litigation among these parties.[11] (*Id*.)

---

[10] Manna alleges that, on March 15, 2022, following a June 21, 2021, hearing on the merits of the suspension of her Certificates of Appointment, her appeal was granted and judgment was entered in her favor. (*Id*. at 46.)

[11] *See Manna v. Manna*, No. 1875 EDA 2021, 2022 WL 15596049 (Pa. Super. Ct. Oct. 28, 2022) (affirming a decision in Manna's favor in an ejectment action filed by Tetyanna Manna). Manna alleges that when she prevailed and the state court found Labowski to be Manna's subtenant, upon receiving the judgment, Labowski and Manna IV destroyed Manna's mailbox located on the shared property, as evidenced by video recording. (SAC at 37.) Labowski allegedly destroyed Manna's mailbox a second time, on November 10, 2020, again evidenced by video recording. (*Id*. at 42.) As a result, after that date Manna's mail was delivered to the competing station. (*Id*.)

Manna alleges that Labowski and Manna, V filed an application to open an inspection station under the name 9th and Lloyd Fast Auto Tags & State Inspections at the same location as Manna's station on August 22, 2019.  (*Id*. at 38.)  On the same date, Labowski boarded up Manna's interior window in the interior lobby that the two businesses shared.  (*Id*. at 39.)  Manna removed the board and was threatened with arrest.  (*Id*.)

In January 2020, Bishop allegedly conducted an investigative audit on the new business to approve the August 22, 2019 application and reported to DOT that no prohibitions existed preventing the issuance of a Certificate of Appointment.  (*Id*. at 40.)  Manna alleges that at the time, Bishop was aware that the two businesses shared a common lobby, and that 67 Pa. Code  § 175.21(e) prohibited this arrangement.  (*Id*.) (quoting 67 Pa. Code  § 175.21(e)) ("No certificate of appointment shall be issued for the operation of an official inspection station on the premises of another official inspection station which utilizes the same access.")  Manna, accordingly, contacted Bishop and his manager, QAO Patrick Monahan to challenge the licensing of the competing business.  (*Id*. at 41.)  Manna does not describe what, if any, response she received to her challenge.[12]  (*Id*.)

**B.      Events Giving Rise to Manna's Claims**

The following series of events, which begin with Manna's unlawful eviction from her business property, form the basis for Manna's claims.  Manna alleges that on September 24, 2021, Defendant Tetyanna Manna moved to strike Manna's supersedeas[13] for failure to file a

---

[12] Manna speculates that DOT allegedly intends to "reappoint" her Certificates of Appointment (after summarily suspending them without due process), and later void them in light of the (allegedly illegal) presence on the same property of the competing business run by Labowski and Manna, V.  (SAC at 27, 82-83, 112.)

[13] The Court understands Manna to be referring to a supersedeas bond, which she would have been required to post to effectuate a stay in proceedings in the Court of Common Pleas, and that the court terminated the stay upon notice that Manna had failed to timely file a proof of service.

timely proof of service, and on October 5, 2021, the Court of Common Pleas terminated a previously imposed stay.[14]  (*Id*. at 46.)  On October 12, 2021, Manna's counsel filed an emergency motion to reinstate the stay, but three days later, Manna was allegedly unlawfully[15] evicted from the property by Tetyanna Manna, Manna IV, and a Delaware County Sheriff.  (*Id*. at 47.)  Manna alleges that upon contacting both the Chester and Delaware County Courts, she was advised that she could re-enter the property, but when she arrived with a locksmith, she was met by a police officer who prevented her from changing the locks or entering the building.  (*Id*.)  Manna alleges that she returned to the Chester County courthouse where a clerk told her to return to the property with a different officer to assist her.  (*Id*.)  However, upon returning to the property, she was met by non-Defendant Officer Disylvestro, who would not permit Manna to enter the property.  Manna alleges that on a recorded call, a Chester County Court clerk advised that the eviction had been completed prematurely, but that it would become legal on Monday, October 18.  (*Id*. at 48-49.)  Manna did not enter the building that day, but instead waited until she received a Court Order reinstating her supersedeas on October 20, 2021.  (*Id*. at 49.)

Manna alleges that on October 15, Defendant Labowski advised Defendant Bishop that Manna had been evicted from her business property, whereupon Bishop directed Defendant Neely to perform an investigative audit to confirm the eviction.  (*Id*.)  Neely allegedly performed the audit on October 20, 2021, and confirmed that Manna had been evicted by asking an employee of the competing inspection station.  (*Id*. at 50.)  Neely allegedly did not contact Manna during the audit, although he had her email address and phone number.  (*Id*.)  Following

---

[14] Manna does not identify the basis of the action that resulted in the granting of the stay in question but infers that it is the stay granted on May 11, 2021.  (*See* SAC at 44.)

[15] Manna alleges that by operation of law, she had sixteen (16) days from the date of the Order terminating her supersedeas to vacate the property.  (SAC at 46.)

Neely's audit, DOT suspended Manna's Certificates of Appointment for "Discontinuance" and changed her station's status on the DOT portal to "ABANDONED," and, later the same day, to "PENDING SUSPENSION." (*Id*. at 51.)

Manna alleges that on October 22, 2021, she successfully placed an online order for vehicle emissions and safety stickers and that DOT processed her payment. (*Id*.) When Manna checked the status of her order on October 27, 2021, she found that her station's status on the DOT portal had been changed to "ABANDONED" by Defendant Roadcap, preventing Manna from purchasing stickers. (*Id*. at 52.) Manna alleges that between October 21, 2021, when her status was listed as "PENDING SUSPENSION," and October 27, 2021, when her status was changed to "ABANDONED," she had performed at least thirty (30) emissions inspections, the results of which were automatically transmitted to Parsons through her emissions analyzer, effectively providing notice to Parsons that Manna's station had not been abandoned. (*Id*.)

Over several days, Manna contacted Bishop, his supervisor, DOT counsel Tiffany Curtis, and DOT's License and Suspension Department to determine why her status on the portal had been changed, and learned that on the day of Neely's audit, he observed postings on her building indicating she had been evicted. (*Id*. at 52-53.) Manna alleges she contacted Bishop, his supervisor and DOT counsel again to clarify the situation and Bishop responded that Neely would likely be required to again visit the station to confirm Manna's claims. (*Id*. at 53.) On October 29, 2021, Manna responded to Bishop by email and questioned why Parsons staff favored the station operated by Labowski and Manna, V over hers, suggesting that her minority status contributed to the disparate treatment the two stations received. (*Id*. at 53-54.) Manna alleges that she received no reply to her email, and that on October 31, 2021, Parsons personnel locked her emissions analyzer. (*Id*. at 54.)

Manna alleges that on November 2, 2021, Defendants Neely and Tustin arrived at her station to perform an investigative audit to confirm that her station was open, but instead began to perform an administrative audit, though none was then due. (*Id*. at 54.) After the audit was completed, Manna allegedly contacted the inspection station hotline to determine why her emissions analyzer was locked and learned that her station status was listed as "SUSPENDED." (*Id*. at 55.) She then emailed Bishop to determine why her station had been suspended and he allegedly responded that Neely's audit had uncovered violations independent of the alleged abandonment that required investigation. (*Id*. at 55-56.) Manna later learned that Neely had discovered that her insurance had been cancelled. (*Id*. at 56.) She also allegedly learned that her insurance had been cancelled on October 18, 2021 for underwriting reasons, but because her mailbox had been destroyed and all of her mail was directed to the competing inspection station, she had not received the written notice of the cancellation. (*Id*. at 57.) Manna alleges that on November 4, 2021, when she learned that her insurance had been cancelled, she immediately secured a new policy. (*Id*.)

On November 4, 2021, Defendant Tustin called and emailed Manna, asking that she meet him at her station in light of the cancellation of her insurance. (*Id*.) Tustin's email allegedly attached a letter from Defendant Madrak advising Manna that her Certificates of Appointment had been voided by virtue of her lapse in insurance coverage and that she was required to immediately cease performing inspections and surrender the Certificates and all other inspection materials pending the DOT's receipt of proof of insurance. (*Id*. at 57-58.) Manna alleges that, in response, she immediately faxed a copy of her new insurance policy to the DOT's License and Suspension Division and emailed Bishop and Tustin copies of the policy. (*Id*. at 58.) Later that day, Manna's station status was changed to "PENDING SUSPENSION" by Roadcap. (*Id*.) Roadcap also allegedly called Manna to advise her that her insurance did not meet program

requirements, that she was to surrender her Certificates of Appointment, and that she was to stop faxing documents to DOT.  (*Id*.)

On November 5, 2021, Manna allegedly received letters suspending her emissions and safety Certificates of Appointment.  (*Id*. at 59.)  Copies of the letters were emailed by Defendant Tustin, who stated in part in his email, "Please see attached.  If I don't hear from you soon to retrieve the States properly [sic], I will consider charging you with Theft of State Property." (*Id*.)  Later that day, Manna's station status was changed to "SUSPENDED."  (*Id*. at 60).

Manna alleges that on November 22, 2021, she filed an appeal in the Delaware County Court of Common Pleas challenging the November 5, 2021 suspensions of her Certificates of Appointment.  (*Id*.)  Also on that date, she alleges she received a second letter from Madrak, again forwarded by email from Tustin, advising that her emissions Certificate of Appointment was void as of October 18, 2021, when her insurance was cancelled, and demanding that she return the Certificate and all other inspection materials and cease performing inspections until she provided proof of new insurance – which Manna alleges she had faxed to the DOT more than two weeks earlier.  (*Id*.)

On November 23, 2021, following a hearing, Manna's motion for a stay of DOT's suspension of her Certificates of Appointment was granted.  (*Id*. at 61.)  On December 1, 2021, Manna again sent copies of proof of her new insurance to Defendant Tustin, and on December 9, 2021, she faxed copies to DOT's License and Suspension Department.  (*Id*.)

Manna alleges that on December 10, 2021, she received a letter updating the voidance date of her Certificates of Appointment to October 18, 2021, the day her insurance lapsed.  (*Id*. at 62.)  On December 13, 2021, Manna alleges that she filed notices of appeal in the Delaware County Court of Common Pleas for the notices of voidance dated November 4, 2021, November 19, 2021, and December 10, 2021.  (*Id*.)  Manna also filed emergency motions for temporary

stay of all of DOT's efforts to declare her Certificates of Appointment void. (*Id*.) On February 3, 2022, the court granted Manna the relief she requested, staying implementation of the voidance and/or suspension of her Certificates of Appointment. (*Id*. at 63.) The court also allegedly requested that Manna make herself and her station available for an administrative audit. (*Id*.) Later that day, Manna allegedly contacted Bishop, his supervisor, and DOT's counsel asking when her portal status would be updated, her emissions analyzer unlocked, and her sticker order processed. (*Id*.) She alleges she did not receive a response to her email. (*Id*.) She repeated her email request the next day, attaching the court's February 3, 2022 Orders. (*Id*. at 64.) Later on February 4, 2022, Manna's emissions and safety station status in the DOT portal was changed by Defendant Roadcap to "CANCELLED/INACTIVE." (*Id*.) Manna alleges that on February 14, 2022, she filed a motion for contempt for the Defendants' failure to comply with the February 3, 2022 stay Orders. (*Id*. at 65.)

Manna alleges she refused Defendant Tustin's request to meet at a state police station to return work orders and inspection stickers, instead requesting additional information regarding any and all actions the DOT would require her to take to return her station to active status. (*Id*. at 65-66.) In response, Defendant Roadcap referred Manna to the DOT's December 10, 2021 letter for required actions and scheduled an audit of her station. (*Id*. at 66.) Manna alleges that Defendants Neely and Tustin arrived at her station on February 25, 2022 to perform an audit. (*Id*. at 67.) Manna alleges that they conducted cancellation and investigative audits, not the administrative audit she expected. (*Id*.) Manna alleges that on March 21, 2022, she received four new notices of cancellation of her emissions and safety inspection Certificates of Appointment from Defendant Madrak, which asserted that she owed the DOT $2,197 for unpaid inspection stickers dating back to March 17, 2020. (*Id*. at 69.) Manna contends that the DOT is in error in this regard and alleges that, had she been delinquent in paying for stickers since March

2020, she would not have been able to place 68 additional orders for stickers as she was able to do after that date.  (*Id*. at 69-70.)  Manna appealed the March 21, 2022 cancellations and alleges that the Court granted her emergency petition for stay on May 10, 2022.  (*Id*. at 70.)

Manna includes a summary of each notice of suspension or cancellation she received from May 2019 through the filing of her SAC and its status.  (*See* SAC at 70-79.)  Most relevant, Manna alleges that she has received final orders from the Court of Common Pleas granting her appeals and rescinding DOT's suspensions of her Certificates of Appointment for the suspensions dated October 22, 2021 and November 5, 2021, the notices of voidance dated November 4, 2019 and November 19, 2021, and the four notices of suspension dated March 22, 2022.  (*Id*.)  She further alleges that each of these decisions is currently on appeal by the DOT to the Pennsylvania Commonwealth Court.  (*Id*. at 79.)

Based on the foregoing, Manna asserts the following claims:

Count One – a due process claim based on the October 22, 2021 immediate suspension of her emissions and safety Certificates of Appointment asserted against DOT, Madrak, and Bishop (SAC at 86-89);

Count Two – a due process claim based on the November 5, 2021 immediate suspension of her emissions and safety Certificates of Appointment asserted against Parsons, DOT, Madrak, and Bishop (SAC 89-91);

Count Three – a due process claim based on the November 4 and 19, 2021 voidances of her safety and emissions Certificates of Appointment, respectively, asserted against Parsons, DOT, Madrak, and Bishop (SAC at 91-95);

Count Four – a due process claim based on the October 31, 2021 locking of her emissions analyzer, asserted against Parsons, DOT, and Bishop (SAC at 95-97);

Count Five – a due process claim based on the March 21, 2022 immediate cancellations of her emissions and safety Certificates of Appointment asserted against Parsons, DOT, and Roadcap (SAC at 97-100);

Count Six – a due process claim based on the Defendants' refusal to comply with Court ordered stays of the October 22, 2021, November 4, 5, and 19, 2021, and March 22, 2022 suspensions and cancellations of her emissions and safety Certificates of Appointment asserted against DOT, Madrak, and Roadcap; (SAC at 100-02);

Count Seven – a conspiracy claim under 18 U.S.C. § 241 asserted against all Defendants (SAC at 102-06);

Count Eight – a conspiracy claim under 18 U.S.C. § 242 asserted against Parsons, DOT, Bishop, Neely, Tustin, Roadcap, and Madrak (SAC at 106-10);

Count Nine – a due process claim and a conspiracy claim under 18 U.S.C. § 245 based on DOT's refusal to comply with Court orders dated April 23, 2023 and September 27, 2023, asserted against DOT and Madrak (SAC at 110-14); [16]

---

[16] Sections 241, 242 and 245 of Title 18 establish criminal liability for certain deprivations of civil rights and conspiracy to deprive civil rights. However, a plaintiff cannot bring criminal charges against a defendant through a private lawsuit, and these sections do not give rise to a civil cause of action. *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001) (stating that civil claims brought under §§ 241 and 242 are "unmeritorious because those statutes do not create a civil cause of action enforceable by the Plaintiff"). Additionally, "[t]here is no civil private right of action available to [Plaintiff] under [18 U.S.C.] sections 242 or 245." *Dormevil v. Domestic Rels. Officer Delaware Cnty. Pennsylvania Child Support Agency*, No. 23-3025, 2023 WL 6144845, at *3 n.26 (E.D. Pa. Sept. 20, 2023) (citing *Mikail v. Kahn*, 991 F.Supp.3d 596, 639 (E.D. Pa. 2014), *aff'd*, 572 F. App'x. 68 (3d Cir. 2014)). Counts Seven, Eight, and claims in Count Nine asserted under Sections 241, 242, and 245 will be dismissed with prejudice. Manna's Count Nine due process claims will be considered separately. Additionally, the Court will liberally construe Manna's SAC as asserting civil rights conspiracy claims under 42 U.S.C. §§ 1983 and 1985. *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). These claims will be considered separately.

Count Ten – a state law claim for tortious interference with contractual relations asserted against 9th and Lloyd, Labowski, Manna, IV, Tetyanna Manna, Manna, V, DOT, and Bishop (SAC at 114-17);

Count Eleven – a state law claim for tortious interference with prospective economic advantage asserted against 9th and Lloyd, Labowski, Manna, IV, Tetyanna Manna, Manna, V, DOT, and Bishop (SAC at 117-20);

Count Twelve – a claim asserting that the contract between DOT and Parsons violates the non-delegation doctrine,[17] the Regulatory Review Act,[18] the Commonwealth Documents Law, and the Commonwealth Attorneys Act[19] against DOT and Parsons (SAC at 121-26);

---

[17] "The Constitution vests all legislative power in Congress and, under the nondelegation doctrine, bars Congress from 'transfer[ring] to another branch "powers which are strictly and exclusively legislative.'" *Consumer's Research v. FCC*, 67 F.4[th] 773, 787 (6th Cir. 2023) (quoting *Gundy v. United States*, -- U.S. --, 139 S. Ct. 2116, 2123 (2019) (plurality)). Manna's claims involve a Pennsylvania agency and she does not allege that Congress has transferred any of its legislative powers to any other branch of government. Because she has invoked a legal doctrine that is not applicable in this case, this claim will be dismissed with prejudice.

[18] The Regulatory Review Act, 71 Pa. Stat. and Cons. Stat. § 745.1 *et seq.*, was enacted to encourage the peaceful resolution of objections to regulations promulgated in accordance with the General Assembly's delegation of authority. (*Id.*, § 745.2(a)). By its terms, it "is not intended to create a right or benefit, substantive or procedural, enforceable at law by a person against another person or against the Commonwealth, its agencies or its officers." (*Id.*, § 745.2(d)). This claim will be dismissed with prejudice.

[19] "The Commonwealth Documents Law, the Regulatory Review Act, and the Commonwealth Attorneys Act establish a mandatory, formal rulemaking procedure that is, with rare exceptions, required for the promulgation of all regulations." *Naylor v. Commonwealth, Dep't of Pub. Welfare*, 54 A.3d 429, 433 (Pa. Commw. Ct. 2012). There are no factual allegations in the SAC pertaining to the promulgation of regulations and, therefore, neither the Commonwealth Documents Law nor the Commonwealth Attorneys Act has applicability in the present case. Any claims premised on these statutes will be dismissed with prejudice.

Count Thirteen – a claim asserting that the contract between DOT and Parsons violates the separation of powers doctrine encompassed in the U.S. and Pennsylvania Constitutions against DOT and Parsons (SAC at 126-28);[20]

Count Fourteen, a claim asserting that the contract between DOT and Parsons violates the Equal Protection Clause of the Fourteenth Amendment against DOT and Parsons (SAC at 128-32);

Count Fifteen – a claim that the contract between DOT and Parsons is unconstitutional and void for vagueness asserted against DOT and Parsons (SAC at 132-34);[21] and

Count Sixteen – a claim asserting violations of the Pennsylvania Constitution against DOT and Parsons (SAC at 134-39) [22]

---

[20] Manna alleges that DOT has contracted with Parsons to supervise, inspect, and, where necessary, discipline emissions and safety inspection stations. Manna further alleges that Parsons is free to exercise its discretion in the performance of its contractual duties.  She claims that DOT has thereby granted Parsons legislative, executive and judicial powers, in violation of the separation of powers doctrine.  (SAC at 127.)  Putting aside the issue whether Manna has standing to challenge the terms of a contract to which she is not a party, the legal doctrine upon which she relies is simply not applicable here. "The purpose of the separation of powers doctrine is to prevent one branch of government from encroaching on the powers of another branch." *Comm'n of Ethics v. Hardy*, 212 P.3d 1098, 1103 (2009), citing *Clinton v. Jones*, 620 U.S. 681, 699 (1997).  However, as Manna states, "Parsons Corporation is not a part of the government." (SAC at 127.)  The separation of powers concept is not applicable here and a claim based on that concept will be dismissed.  Rather, this claim is best understood as a restatement of Manna's due process claim – *i.e.*, that because the contract allows for the exercise of discretion by Parson employees in the performance of their contractual duties, they were empowered to violate her due process rights.  (SAC at 126-28.)  Manna's due process claims will be considered separately.

[21]"The void-for-vagueness doctrine focuses on legislation – not 'policies and actions.'" *Swagler v. Neighoff*, 398 F. App'x. 872, 879 (4th Cir. 2010).  The void for vagueness doctrine is not applicable in this context, and Manna's claim based on this doctrine will be dismissed.

[22] "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*).  As there is no private right of action for damages under the Pennsylvania Constitution, this claim will be dismissed.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute

Manna seeks money damages.  She also requests injunctive relief in the form of an order permanently enjoining the DOT and Parsons Defendants from "immediately suspending the Plaintiff's Certificate of Appointment for either her emissions or safety inspection station without a Departmental hearing and a thorough review of that hearing and allegations made by the Department of Transportation direct agents."  (SAC 88-89.)[23]

## II.    STANDARD OF REVIEW

The Court will grant Manna leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action.  Accordingly, her SAC is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and must be dismissed if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Manna is proceeding *pro se*, the Court construes her allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

---

establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[23] Manna repeats her request for injunctive relief in each Count of her SAC.

*Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

## III.    DISCUSSION

Manna asserts claims for violations of her constitutional rights to due process and equal protection.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.    Claims Against DOT and Official Capacity Claims Against DOT Employees

Manna asserts claims for money damages against DOT and official capacity claims against DOT employees Madrak, Roadcap, and Tustin.  (SAC at 23-24.)  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Additionally, suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see*

*also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Therefore, the claims for money damages Manna seeks to assert against DOT, and her claims for money damages against Madrak, Roadcap, and Tustin in their official capacities may not proceed.

However, Manna may pursue her claim for money damages against state officials sued in their individual capacities, because state officials sued in their individual capacities are "persons" within the meaning of § 1983, s*ee Hafer*, 502 U.S. at 31, and the Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in their individual capacities.  *Id.*  Additionally, the Eleventh Amendment does not generally bar prospective declaratory or injunctive relief.  *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016).  However, these claims are properly brought against state officials in their official capacities, and not against the state itself or its agencies.  *See Donahue*, 2019 WL 923786, at *7 ("[t]he Eleventh Amendment . . . protects an unconsenting state or state agency from a suit brought in federal court, *regardless of the relief sought*.") (emphasis in original); *Capograsso v. The Supreme Court of New Jersey*, 588 F.3d 180, 195 (3d Cir. 2009) (same).

Manna requests prospective injunctive relief in the form of an order permanently enjoining the DOT and Parsons Defendants from "immediately suspending the Plaintiff's

Certificate of Appointment for either her emissions or safety inspection station without a Departmental hearing and a thorough review of that hearing and allegations made by the Department of Transportation direct agents." (SAC 88-89.) Manna's request for prospective injunctive relief cannot proceed against DOT. However, she may pursue her claims for prospective injunctive relief against the named state officials acting in their official capacities.

### B.   Constitutional Claims

#### 1.   State Action Requirement and Official Capacity Claims

Manna alleges that all DOT and Parsons Defendants were always acting under color of state law. (*Id*. at 27.) Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The test imposed for

determining whether a private party is exercising a traditionally exclusive public function is "a rigorous standard that is rarely satisfied for while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001) (internal quotations and alterations omitted) (holding that private school at which plaintiff was placed as a minor by the Department of Human Services was not a state actor); *see also Leshko*, 423 F.3d at 347 (foster parents were not exercising a traditionally exclusive public function and were not state actors despite contractual relationship with social services agency).

Manna alleges that Parsons and its employees were acting under color of state law pursuant to a contract with DOT. (SAC at 27.) However, "it is well-established that '[a]cts of . . . private contractors do not become acts of government by reason of their significant or even total engagement in performing public contracts.'" *Horton v. USA Env't Mgmt., Inc.*, No. 13-3352, 2013 WL 5377284, at *4-5 (E.D. Pa. Sept. 24, 2013) (granting demolition contractor's motion to dismiss plaintiff's amended complaint where contractor's demolition of a building pursuant to contract with city did not permit contractor to substitute its judgment regarding demolition for that of the city) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)). But "when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that party's conduct actionable under § 1983." *Horton* 2013 WL 5377284, at *5 (quoting *Cruz v. Donnelly*, 727 F.2d 79, 82 (3d Cir. 1984)). *See also Dietrich v. Schaaf Excavating Contractors, Inc.*, No. 18-1697, 2021 WL807712, at *6-*7 (W.D. Pa. Mar. 3, 2021) (demolition contractor who was not alleged to have performed any discretionary government functions when it demolished building pursuant to contract was not a state actor); *Win & Sons, Inc. v. City of Phila.*, 162 F.Supp.3d 449, 459 (E.D. Pa. 2016) (granting summary judgment in favor of contractor in Section 1983 case on

grounds that it was not a state actor where evidence showed that it did not perform discretionary government functions, including making decisions as to whether a building was "imminently dangerous" or determining when it was necessary to demolish a building).

Manna specifically alleges that the terms of the contract between DOT and Parsons allowed Parson to use its discretion in performing its contractual obligations.  (*See*, *e.g*., SAC at 29.)  Throughout her SAC, Manna repeatedly alleges that Parsons employees used their discretion to determine whether she had committed a violation and whether some form of discipline was required.  In particular, Manna points to Parsons's authority to lock an inspection station's vehicle emissions analyzer at its discretion, effectively closing the business.  (SAC at 30, 84.)  She alleges that Bishop exercised his discretion to take this action on several occasions, including during the events between October 2021 and March 2022 that form the basis for Manna's claims.  (*See* SAC at 54, 95-97.)  Manna also alleges that hearings regarding violations were, pursuant to the contract, to be held by Parsons's personnel.  (SAC at 29-30, 84.)  She alleges that during the events giving rise to her claims, she was not provided with a hearing before disciplinary measures were taken.  (SAC at 75, 87, 88, 90, 99.)  Because Manna alleges that Bishop and Parson exercised discretion in the performance of their contract with DOT, the Court finds for purposes of statutory screening that Manna has plausibly alleged that Bishop and Parsons acted under color of state law.

Notwithstanding the Court's decision in this regard, Manna's official capacity claims against Parsons employees Bishop and Neely must be dismissed with prejudice, because, as Parsons is also named as a Defendant, the "official capacity" claims against its employees are merely duplicative of the claims against Parsons itself and are thus not cognizable.  *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the

District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  These official capacity claims will be dismissed with prejudice.

Manna also asserts official capacity claims against Kayla Labowski, Manna, V, Tetyanna Manna, and Manna, IV.  (SAC at 25.)  However, she does not allege that they acted under color of state law and the concept of "official capacity" is inapplicable in the context of the claims asserted against them. These official capacity claims will be dismissed with prejudice.

### 2.  Due Process Claims Based on Denial of Administrative Hearing

In Counts One through Five of her SAC, Manna asserts due process claims based on DOT's suspension and/or cancellation of her Certificates of Appointment without providing her with a hearing beforehand.  Her claims are based on the following:  on October 22, 2021, her emissions and safety Certificates of Appointment were suspended without a hearing (SAC at 87); on November 5, 2021, her emissions and safety Certificates of Appointment were suspended without a hearing (SAC at 90); on November 4 and 19, 2021, Manna's safety and emissions Certificates of Appointment, respectively, were voided without a hearing (SAC at 92); on October 31, 2021, Manna's emissions analyzer was locked, preventing her from performing vehicle inspections, without notice or a hearing (SAC at 95-96); and on March 22, 2022, her emissions and safety Certificates of Appointment were suspended and/or cancelled without a hearing (SAC at 97-99).  In short, she alleges that Parsons locked her out of her emissions analyzer, and DOT suspended her Certificates of Appointment, denied delivery of her paid-for vehicle inspection stickers and manipulated Manna's station status in the inspection station

portal, denying her the ability to conduct vehicle emissions and safety inspections, all without any pre-deprivation administrative hearing.  She alleges that instead, the suspensions were imposed immediately and without a hearing or notice, in violation of her procedural due process rights.  (SAC at 15, 86-102.)  She alleges that, as a result, she has been unable to perform emissions or safety inspections since November 2, 2021.  (SAC at 63.)

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest.  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance.  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Pennsylvania law defines what process is due to an inspection station operator before suspension of his or her Certificate of Appointment.  First, Section 4724 of Title 75 of the Pennsylvania Statutes and Consolidated Statutes provides in part that the DOT "shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station . . . which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department."  75 Pa. Stat. and Cons. Stat. § 4724(a).  Next, Section 177.651 of Title 67 of the Pennsylvania Administrative Code provides, "[p]rior to the immediate suspension of any official emission inspection station, certificate of appointment, emission inspector certification or certified repair technician, the Department shall, within 3 days, provide written notice of the alleged violation and the opportunity to be heard."  67 Pa. Code § 177.651.  DOT's immediate suspension of Manna's Certificates of Appointment, and other acts such as locking her emissions analyzer, without benefit of a prior administrative agency hearing, alleges a plausible claim that she was

denied due process.  *See Santiago v. Commonwealth, Dep't of Transp.*, No.712 C.D. 2008, 2009 WL 9102845, at *2 (Pa. Commw. Ct. June 4, 2000) (on appeal from order permanently suspending emissions inspector's certificate of appointment, DOT admitted individual who was not provided with a formal administrative agency hearing before suspension of certificate of appointment as emissions inspector was denied due process).  *See also Fairfield Ford/VW/Hyunda/Mitsubishi v. Com., Dept. of Transp.*, No. 02-0010, 2002 WL 34102902, at *8 (C.P. Lycoming Apr. 26, 2002) ("There is no question that Fairfield is entitled to due process rights when faced with the loss or suspension of its inspection license…. This means at a minimum that the Department must afford Fairfield a hearing prior to the suspension of its license in order to provide a reasonably reliable basis on which to conclude that the facts alleged by the department are true and under the law support a suspension.") (citations omitted).  Counts One through Five of Manna's SAC will be served for a responsive pleading.

### 3.    Due Process Claims Based on DOT's Non-compliance with Stay Orders

In Counts Six and Nine of her SAC, Manna asserts due process claims based on DOT's and its employees Madrak's and Roadcap's refusal to comply with Court ordered stays of the October 22, 2021, November 4, 5, and 19, 2021, and March 22, 2022 suspensions and cancellations of Manna's emissions and safety Certificates of Appointment (SAC at 100-02), and upon DOT's refusal to comply with Court orders dated April 23, 2023 and September 27, 2023. (SAC at 110-14.)  Manna asserts that these refusals deprived her of the ability to re-open and operate her inspection station and amounted to a violation of her due process rights on a level with the original, immediate suspensions of her Certificates of Appointment.  Count Six and the due process claims included in Count Nine, accordingly, assert plausible claims and will be served for a responsive pleading.

### 4.      Equal Protection Claims

In Count Fourteen of her SAC, Manna asserts that the contract between DOT and Parsons as written violates the Equal Protection clause of the Fourteenth Amendment because it "allows agents with racial and gender-based bias's [sic] the unwavering power to reverse our diverse business participation statutes." (SAC at 129.)  The Court construes this as a Fourteenth Amendment equal protection claim against DOT and Parsons.  For the following reasons, Manna has not stated a plausible claim.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "A plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest."  *Young v. New Sewickley Twp.*, 160 F. App'x. 263, 266 (3d Cir. 2005) (citing *City of Cleburne v. Cleburne Living Cntr.*, 473 U.S. 432 (1985)).  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"  *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).  Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus.  *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

Manna's claim suffers from several deficiencies.  First, as pled, her claims are asserted against DOT and Parsons, presumably based on the conduct of employees of these entities.

However, liability under § 1983 cannot be predicated on a *respondeat superior* basis.
*Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 22015); *Robinson v. Delbalso*,
No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).  Rather, "[a] defendant in a
civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode*,
845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018)
("Each Government official, his or her title notwithstanding, is only liable for his or her *own*
misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley*, 957 F.3d at 374
("Personal involvement requires particular 'allegations of personal direction or of actual
knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676
(explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must
plead that each Government-official defendant, through the official's own individual actions, has
violated the Constitution").  If Manna chooses to pursue this claim further, she must identify the
individuals who engaged in conduct that allegedly violated her equal protection rights.

Next, the factual allegations in Manna's SAC do not provide a plausible basis for an
equal protection claim based on her membership in a suspect class.  Manna alleges that she is
Black but does not include any factual allegations suggesting that the Defendants' conduct was
motivated by her race.  Rather, Manna alleges that the Defendants acted for the specific purpose
of putting Manna out of business, not because she is Black, but because of hostile relations
between Manna and other family members named as Defendants in this case.  (*See* SAC at 104
(alleging that Defendant Manna, IV stated he opened the competing vehicle inspection station to
put Manna out of business)); (SAC at 103 (alleging Defendant Bishop was acquainted with
Manna, IV prior to his appointment as Manna's auditor and "had personal knowledge of the
ongoing familial conflict between the Plaintiff and the other Defendants.").)  The factual
allegations in the SAC are insufficient to support an inference that any Defendant engaged in the

28

conduct described because Manna is Black.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Moreover, Manna does not identify a similarly situated emissions and safety inspection station that was treated differently than hers was because of the race of its owner.  To the extent Manna seeks to allege that the competing inspection station operated by Defendants Manna, V and Labowski was a similarly situated station that was treated differently by the Defendants, she has already attributed any differing treatment to a pre-existing relationship between Bishop and members of the Manna family, and not to race.  (SAC at 85, 103-04.)  She does not identify any other similarly situated emissions and safety inspection station whose treatment can be compared to that which she received from the Defendants.

For these reasons, Manna has not stated a plausible equal protection claim and this claim will be dismissed.  Because the Court cannot state that Manna will not be able to state a plausible claim, she will be granted leave to amend this claim.

### 5.    Conspiracy Claims

In Counts Seven through Nine of her SAC, Manna asserts conspiracy claims against all Defendants pursuant to 18 U.S.C. §§ 241, 242, and 245.  (SAC at 102-14.)  Because these criminal statutes do not give rise to a private cause of action, these claims will be dismissed with prejudice.  *See supra* at 15 n.17.  However, the Court liberally construes Manna's SAC as asserting civil conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985.  For the reasons that follow, any § 1985 conspiracy claim is not plausible and will be dismissed with prejudice.

Manna's § 1983 conspiracy claim will be dismissed without prejudice as not plausible.  She will be granted leave to amend this claim.

### a. Section 1983 Conspiracy Claims

The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'"  *Jutrowski*, 904 F.3d at 294 (quoting *Barnes Foundation v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). A § 1983 conspiracy claim is viable only if there has been an actual deprivation of a constitutional right.  *Sweetman v. Borough of Norristown*, 554 F. App'x 86, 89-90 (3d Cir. 2014) (*per curiam*) (citations omitted).  The Supreme Court has held that § 1983 conspiracy liability may attach to private parties who conspire with a state actor.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not suffice."  *Twombly*, 550 U.S. at 556.

Manna describes the alleged conspiracy as follows:

> The inappropriate opening of Defendants Kayla Labowski and Ernest F. Manna V's inspection station, the subsequent violations and regarding the instant matter, the call by Defendant Kayla Labowski to QAM Bishop on or about October 20, 2021 regarding the unlawful eviction of the Plaintiff was a strategic plan implemented by Defendant QAM Bishop, Ernest F. Manna, IV, Tetyanna Manna, Kayla Labowski and Ernest F. Manna, IV to close the Plaintiff's business beginning November 2, 2021.

(SAC at 104.)

Although couched in terms of a concerted effort to close Manna's business rather than to deprive her of a constitutional right, the conspiracy described is based on the same alleged acts that that the Court has deemed plausibly state a claim for violations of Manna's due process rights by DOT and Parsons employees.  At this screening stage, the allegations in the SAC describing Labowski, Manna, V, and Bishop's contributions to and/or encouragement of DOT's suspension of Manna's Certificates of Appointment plausibly state a § 1983 conspiracy claim against them. However, Manna does not include sufficient facts to allege a conspiracy claim against Tetyanna Manna or Manna, IV and her conspiracy claim against them will be dismissed without prejudice.  Manna may amend this claim.

### b.  Section 1985 Civil Rights Conspiracy Claims

Section 1985(3) of Title 42 of the United States Code creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997).  "'The [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'"  *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Significantly, "in the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under

31

§ 1985(3):  the right to be free from involuntary servitude and the right to interstate travel."

*Brown v. Philip Morris, Inc*., 250 F.3d 789, 805 (3d Cir. 2001) (affirming district court's

dismissal of § 1985(3) claims where, "[t]he great weight of [] authority . . . supports the

traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude.")

(citations omitted).  Nothing in the SAC suggests that Manna is seeking to redress wrongs

implicating her right to engage in interstate travel, or her right to be free from involuntary

servitude.  (*See* SAC.)  Accordingly, this claim will be dismissed with prejudice.

### C.     State Law Claims

#### 1.     Tortious Interference with Contractual Relations

In Count Ten of her SAC, Manna asserts that by their actions, Defendants Labowski,

Manna, IV, DOT and Bishop interfered with her contractual relationship with DOT.  (SAC at

114-17.)  The elements of a claim for tortious interference with contractual relations are "(1) the

existence of a contractual relation between the complainant and a third party; (2) purposeful

action on the part of a defendant, specifically intended to harm the existing relation; (3) the

absence of privilege or justification on the part of the defendant; and (4) the occasioning of

actual legal damage as a result of the defendant's conduct."  *Charbonneau v. Chartis Prop. Cas.

Co.*, No. 13-4323, 2014 WL 1259567, at *7 (E.D. Pa. Mar. 26, 2014) (citing *Strickland v. Univ.

of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

Manna's claim fails as pled because she alleges only in conclusory fashion that she

maintains a contractual relationship with DOT, and does not support this with factual allegations.

The only alleged basis for her relationship with DOT is her Certificates of Appointments, which

are in the nature of a license.  "Absent 'clear, unequivocal language to the contrary, an ordinary

business license is not considered to be a contract between a government and private parties.'"

*Lindsay v. City of Phila.*, 863 F. Supp. 2d 220, 224 (E.D. Pa. 1994) (quoting *Kennedy v. Hughes*,

596 F. Supp. 1487, 1495 (D. Del. 1984) (issuance of vendors license did not provide licensee enforceable contractual right to continue to vend in particular location)).  This claim will be dismissed as not plausible.

### 2.    Tortious Interference with Prospective Economic Advantage

In Count Eleven of her SAC, Manna asserts a claim for tortious interference with prospective economic advantage against Kayla Labowski, Manna, V, Tetyanna Manna, Manna, IV, DOT and Bishop.  (SAC at 117-120.)  "A claim of tortious interference with prospective economic advantage must allege (1) a prospective contractual relationship, (2) defendant's intent to harm plaintiff by preventing the relationship from occurring, (3) the absence of privilege or justification on the part of the defendant, and (4) the occurrence of actual damages."  *Benefit Control Methods v. Health Care Servs, Inc*., No. 97-4418, 1998 WL 22080, at *1 (E.D. Pa. Jan. 16, 1998) (citing *Kachmar v. Sungard Data Sys., Inc*., 109 F.3d 173, 184 (3d Cir. 1997)).  The prospective relationship must be more than a "mere hope."  The plaintiff "must allege facts which, if proven, would give rise to 'a reasonable probability' that [he or she] would have entered into particular contracts but for the defendant's interference."  *Benefit Control Methods*, 1998 WL 22080, at *1 (citing *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp 1450, 1459 (E.D. Pa. 1992).

Manna's claim is not plausible because she does not allege the existence of a prospective contractual relationship.  She does not allege any facts which would support an inference that specific contracts existed into which either she or third parties were prevented from entering.  She bases her claim on her then existing relationship with DOT, but that is not a prospective contractual relationship.  *See Neopart Transit, LLC v. CBM N.A., Inc*, 314 F.Supp.3d 628, 639 (E.D. Pa. 2018) (granting motion to dismiss tortious interference with prospective contractual relations claim because plaintiff's "historical relationship with its clients does not establish a

prospective contractual relationship," and noting that "[c]ourts do not find a reasonable likelihood that a prospective contractual relationship would have occurred if a plaintiff only presents evidence of a current business relationship.") (citing *BP Env't Servs., Inc. v. Republic Servs., Inc.,* 946 F.Supp.2d 402,412 (E.D. Pa. 2013) (granting summary judgment to defendant on tortious interference with prospective contractual relations claim where only evidence of prospective relations plaintiff presented was existence of past relationship with prospective party, and recognizing that "Pennsylvania courts have consistently required more evidence than the existence of a current business or contractual relationship" to support a claim that there exists a "reasonable probability" that a prospective contractual relationship will come to fruition)).

To the extent Manna seeks recovery for damages stemming from the dissolution of any relationship she had with DOT, it is properly sought in her tortious interference with contractual relations claim.  Manna's tortious interference with prospective economic advantage is not plausible as pled and will be dismissed.  Manna will be granted leave to amend this claim.

## IV.     CONCLUSION

For the reasons stated, the Court will grant Manna's motion for leave to proceed *in forma pauperis*.  The following claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii):  Counts Seven and Eight; that part of Count Nine asserting claims based on 18 U.S.C. § 245; Counts Twelve, Thirteen and Sixteen; Manna's claims against the DOT for money damages; her official capacity claims against Bishop, Neely, Kayla Labowski, Manna, V, Tetyanna Manna, an Manna, IV; and her § 1985 conspiracy claims.  Manna's equal protection claims, her § 1983 conspiracy claims, her state law claims for tortious interference with contractual relations and tortious interference with prospective economic advantage, and her claims against 9th and Lloyd Fast Auto Tags and State Inspections and ManFam Real Estate will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii).  The Court is prepared to serve Manna's due process claims asserted in Counts One through Six and part of Count Nine, and her related § 1983 conspiracy claims for a responsive pleading, but Manna will be afforded the option of proceeding with those claims only or filing a third amended complaint.  An appropriate Order follows with additional information on her option to amend or proceed.


BY THE COURT:

_____

**MIA ROBERTS PEREZ, J.**